FILED
SUPERIOR COURT
OF GUAM

2022 MAR 14 AM 9: 16

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM,<br><br>vs.<br><br>**JEROME CAMACHO CRUZ aka Jerome Anthony Camacho Cruz aka Anthony,**<br><br>Defendant. | **CRIMINAL CASE NO. CF0157-21**<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on November 5, 2021, for hearing on Defendant **JEROME CAMACHO CRUZ aka Jerome Anthony Camacho Cruz aka Anthony's** ("Defendant") Motion to Suppress. Defendant was present with counsel, Jeffrey A. Moots,[1] and Assistant Attorney General Sean E. Brown was present on behalf of the People of Guam ("the Government"). Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On April 1, 2021, Defendant was indicted with the following charges: (1) Possession of a Schedule II Controlled Substance with Intent to Deliver (As a First Degree Felony); (2) Possession of a Schedule II Controlled Substance (As a Third Degree Felony); (3) Possession of a Firearm Without a Firearms Identification Card (As a Third Degree Felony) – 2 Counts; (4)

---

[1] Attorney Moots subsequently withdrew as counsel for Defendant. Attorney Gloria A.L. Rudolph was appointed as Defendant's counsel on January 24, 2022. *See* Notice of Court Appointed Counsel, Jan. 24, 2022.

Possession of an Unregistered Firearm (As a Third Degree Felony) – 2 Count; (5) Violation of a Court Order (As a Misdemeanor); and (6) Violation of a Court Order (As a Misdemeanor) – 4 Counts.[2] (Indictment, Apr. 1, 2021). Each of the felony charges and counts also has an attached Notice: Commission of a Felony While on Felony Release. *Id.* These charges stem from the discovery of drug paraphernalia, suspected methamphetamine and firearms by Superior Court of Guam Marshals during the course of serving Defendant with a protective order on or about March 22, 2021. (Decl. of Courtney Leigh Scalice, Magistrate's Compl., Mar. 24, 2021). A federal search warrant was subsequently issued by District Court of Guam Magistrate Judge Michael J. Bordallo. *Id.* ATF and GPD Officers who executed the warrant at Defendant's residence recovered additional drug paraphernalia, suspected methamphetamine totaling 22.95 gross grams, several round pills, several white and yellow pills that appeared to be Xanax, a large amount of currency, and firearms. *Id.* At the time of the allegations in this matter, Defendant was on pre-trial release in CF0580-20 and CM0581-19.

On October 5, 2021, Defendant filed the instant Motion to Suppress. On October 13, 2021, the Government filed its Opposition. On October 25, 2021, Defendant filed his Reply.

On November 5, 2021, the Court heard sworn testimony from Judiciary of Guam Marshals Rina Mendiola, Roland Untalan, Sonda Yatar, and Guam Police Department Officer RJ Camacho regarding the Motion to Suppress. The Court then gave the parties leave to file proposed findings of fact and conclusions of law.

On December 3, 2021, the Government filed its Proposed Findings of Fact and Conclusions of Law, and on December 10, 2021, Defendant filed his proposed Findings of Fact and Conclusions of Law. The Court subsequently placed the matter under advisement.

At the Suppression Hearing, the Court ascertained the following facts:

1. On March 19, 2021, Deputy Marshal Mendiola was tasked to serve an order of protection on Defendant and Co-Defendant Kailene Mendiola.

---

[2] The Indictment also charges co-defendant Kailene Isabel Pangelinan Mendiola with (1) Possession of a Schedule II Controlled Substance (As a Third Degree Felony) and (2) Possession of a Schedule IV Controlled Substance (As a Third Degree Felony) – 2 Counts.

2. Marshal Mendiola testified that they did not attempt to serve Defendant at the residence because they had received information from the Petitioner in the protective order that Defendant was not home and that he had just picked up his son and was on the way to the beach in Tumon.

3. Marshal Mendiola testified that they were unable to locate Defendant after several searches of the beaches in Tumon.

4. On March 22, 2021, a second attempt at service was conducted, after the marshals received information from the Petitioner in the protective order matter that Defendant was at home.

5. The marshals went to 230A Jeje Court, Ordot, Guam, to serve the order of protection.

6. Marshal Mendiola testified that prior to serving an order of protection, marshals conduct research on the respondent. Upon researching Defendant's name, it was discovered that Defendant had prior criminal cases, and additional manpower was requested.

7. A team of five marshals proceeded to the residence. Marshal Mendiola and Sergeant Untalan approached the front door of the residence. The other marshals addressed three other male individuals in the garage area, one of which had an active warrant. Contraband was later found in the bag of the male individual with an outstanding warrant.

8. After knocking on the door and announcing their presence, Marshal Mendiola and Sergeant Untalan were met by a thirteen year old boy, Defendant's son. He went and knocked on his dad's bedroom door. Defendant and Co-Defendant Kailene Mendiola exited the bedroom and met with the marshals.

9. Marshal Mendiola handed both Defendant and Co-Defendant Mendiola copies of the protective order, and informed them of what her purpose in being there was.

10. Both Defendant and Co-Defendant Mendiola verbally acknowledged the protective order. The protective order ordered both respondents to "[i]mmediately vacate the family residence. . . ."

11. Defendant and Co-Defendant Mendiola then requested to be able to gather some of their necessities from inside the residence, such as their car keys. Defendant did not have a shirt on at this time.

12. Defendant was told that he would be accompanied by a marshal back into the residence, to which he consented verbally.

13. Upon arriving in the hallway, Sergeant Untalan noticed the bedroom door was locked. After asking Defendant how to gain access to the bedroom, Defendant directed them to a bathroom door.

14. Marshal Mendiola testified that Defendant never said that he did not want them to be there or that they should all just leave.

15. Sergeant Untalan advised Defendant that he was going to conduct a safety check before entering the room.

16. Upon entering the room, Sergeant Untalan discovered suspected narcotics and weapons in the bedroom.

17. Defendant and Co-Defendant Mendiola were then placed in handcuffs and taken outside of the residence, and GPD was called. Officers from GPD, ATF, and DEA eventually arrived on scene and a federal search warrant was obtained.

18. Marshal Mendiola acknowledged that if Defendant had attempted to enter the residence without marshal permission, he would have been arrested for violation of the order he was just served.

19. Both Marshal Mendiola and Sergeant acknowledged that they are not probation officers or police officers, and were not so employed on the date of the search.

20. Captain Yatar had no interaction with Defendant at the time the protective order was served. She was not aware of any conversation between the marshals and

Defendant. Captain Yatar entered the residence after the suspected narcotics and weapons were discovered in Defendant's room.

21. The marshals testified that they would typically allow respondents of protective orders to re-enter the residence before vacating the premises as a reasonable accommodation to allow the respondents to retrieve belongings such as car keys, identification, medication, clothing, toiletries, etc.

22. The marshals also testified that the respondents are accompanied back into the residence for safety reasons, as protective orders are emotionally driven.

## DISCUSSION

Defendant moves the Court to suppress all evidence seized from his residence on March 22, 2021. Defendant argues that because he had been served with a protective order, he no longer had any legal right to enter the property and therefore did not have authority to give consent to search. *See generally,* Mot. Suppress, Oct. 5, 2021. The Government opposes, arguing that Defendant gave consent to a warrantless search at the time of the protective order's execution, which was valid until he had actually physically vacated the premises, and that the marshals were also authorized to search the residence without Defendant's consent or a warrant because he agreed to a warrantless search as a condition of his pre-trial release in CF0580-20. *See generally,* Opp'n, Oct. 13, 2021.

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf,* 2001 Guam 1 ¶ 14 (internal citations omitted). "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Kyllo v. United States,* 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States,* 365 U.S. 505, 511 (1961)). "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Id.* at 33 (citation omitted). "[A] Fourth Amendment search does *not* occur - even when the explicitly protected location of a *house* is concerned - unless the individual manifested a subjective expectation of privacy in the object of the

challenged search, and society is willing to recognize that expectation as reasonable." *Id.* (citations, internal quotation marks, and alterations omitted) (emphasis in original).

"A search or seizure made without a warrant is presumed to be unreasonable. In the absence of a warrant, the police may lawfully conduct a search or seizure only if an exception to the warrant requirement applies. Voluntary consent is a recognized exception to the warrant requirement." *Chargualaf,* 2001 Guam 1 ¶ 14. For a warrantless search justified upon consent to be valid, the consent must be "freely and voluntarily given." *Schneckloth v. Bustamonte,* 412 U.S. 218, 222 (1973) (citations omitted). "[T]he question whether a consent to search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *Id.* at 227. "The People bear the burden of proving, by a preponderance of the evidence, that consent was given voluntarily." *Chargualaf,* 2001 Guam 1 ¶ 25.

In examining the totality of the circumstances, the Court finds that Defendant's consent for the marshals to enter the residence was freely and voluntarily given. Defendant did not expressly tell the marshals that they could not enter or that he did not want them to be there, and directed them as to how they could enter his bedroom. At the time of the marshals entering the residence, there had been no discussion of any crime. The purpose of Defendant and the marshals entering the residence was to ensure that Defendant could get essential items such as clothing and identification, pending an order to show cause hearing on the protective order. Although Defendant had been served with the protective order prior to obtaining his belongings, Defendant had not yet physically left the property and had requested to return inside to retrieve his belongings. The Court finds that Defendant still maintained the ability to consent to the marshals entering the residence with him. Accordingly, the marshals were lawfully present inside the residence and once inside Defendant's room, observed firearms and suspected narcotics in plain view. *See Horton v. California,* 496 U.S. 128, 136 (1990) ("It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed."). In light of the foregoing, it is unnecessary for the Court to reach the issue of

whether the marshals lawfully executed a search pursuant to Defendant's pre-trial release conditions in CF0580-20.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress. Further Proceedings are set for **April 4, 2022 at 11:30 a.m.** via Zoom.

**IT IS SO ORDERED** this *14th* day of March, 2022.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam